```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

CECIL MORRISON SIMON,

            Plaintiff,
                                        MEMORANDUM AND ORDER
      -against-
                                        20-CV-127(KAM)
COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Cecil M. Simon ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not disabled within the meaning of the Social Security Act (the "Act"), and therefore, was not eligible for supplemental security income benefits under the Act.  Presently before the court are plaintiff's motion for judgment on the pleadings and defendant's cross-motion for judgment on the pleadings.  For the reasons herein, plaintiff's motion is GRANTED, defendant's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## Background

The parties have filed a joint statement of stipulated facts, which the court incorporates by reference.  (*See* ECF No.

1

20-1, Joint Statement of Facts ("Stip.").) The court will briefly recount the factual background relevant to the parties' pending motions.

Plaintiff's alleged disability stems from spinal and gastrointestinal issues, as well as left eye blindness. In 2005, plaintiff was diagnosed with ulcerative colitis. (*Id.* at 4.) In July 2010, plaintiff underwent a colonoscopy that revealed various forms of non-specific mild, moderate acute, and chronic inflammation. (*Id.* at 4-5.) In April 2014, plaintiff received a colon biopsy that revealed mild to moderate chronic inflammation at various locations. (*Id.* at 5.) In December 2015, plaintiff was diagnosed with lumbosacral radiculopathy, a disease involving the lumbar spinal nerve root. (*Id.* at 6.) In July 2016, an MRI of the plaintiff's cervical spine revealed bulging discs and spondylosis. (*Id.*) Concurrently, an MRI of the plaintiff's lumbar spine revealed multiple mild disc bulges. (*Id.*) Also, according to plaintiff, his left eye was blinded in an encounter with a police officer in the 1980s. (*Id.* at 7.)

The parties' arguments in this appeal focus on the Administrative Law Judge's handling of the opinion of Dr. John Fkiaras, who conducted a consultative internal medicine examination of plaintiff on October 21, 2016, after plaintiff filed his application for benefits. (*Id.* at 5.) Plaintiff reported to Dr. Fkiaras cervical pain over the previous five

years, back pain over the previous two to three years, and shoulder pain over the previous ten years.  (*Id.*)  Plaintiff rated his neck and spine pain as seven or eight, out of ten, in severity.  (*Id.*)  Plaintiff described difficulty walking four to five blocks and climbing two to three stairs at a time, difficulty lifting 30 pounds, and difficulty standing for more than 20 minutes or sitting for more than 30-35 minutes at any one time, although twice weekly physical therapy provided some pain relief, as did marijuana use.  (*Id.*)

Plaintiff also told Dr. Fkiaras that he was hit by a police officer in his left eye in the 1980s, and as a result, he was blind in that eye.  (*Id.*)  An eye examination by Dr. Fkiaras revealed plaintiff's right eye vision was 20/20, and his left eye vision was 20/200.  (*Id.* at 6.)  Dr. Fkiaras also noted that plaintiff's left pupil was not reactive to light.  (*Id.*)

During the examination, plaintiff also stated that he was stabbed in the abdomen in 1991 or 1992, and that he had suffered from ulcerative colitis since 2005.  (*Id.* at 5-6.)  Dr. Fkiaras observed a surgical scar on plaintiff's left abdomen. (*Id.* at 6.)  Plaintiff told Dr. Fkiaras that he had bouts of diarrhea four to five times per day, and sometimes up to ten times per day.  (*Id.*)

Dr. Fkiaras further observed: plaintiff had a moderate antalgic gait and could not walk on his heals, could walk on his

3

toes with difficulty, and could only squat one half of the way down; plaintiff's stance was normal, and he was able to rise from a chair, change for the exam, and was able to get on and off of the exam table, all without assistance; plaintiff's cervical spine revealed reduced range of motion, and plaintiff's lumbar spine showed reduced rotation and flexation; plaintiff's left hip was limited with respect to backward extension and abduction; plaintiff's joints were stable; and plaintiff's deep tendon reflexes were normal.  (*Id.*)

Ultimately, Dr. Fkiaras opined that plaintiff was "restricted from activities which require fine visual acuity," "restricted from driving and operating machinery," and "restricted from activities which require exposure to unprotected heights."  (*Id.* at 7; ECF No. 10, Administrative Record ("Tr."), at 280.)  Dr. Fkiaras further opined that plaintiff had "moderate limitation standing extended periods," "moderate limitation for repetitive heavy lifting, carrying, pushing, pulling, squatting, kneeling, and crouching," and that plaintiff "should avoid smoke, dust, and known respiratory irritants."  (*Id.*)  Lastly, Dr. Fkiaras opined that plaintiff had "moderate-to-severe schedule disruptions."  (*Id.*)

Plaintiff's application for benefits, which was filed on August 23, 2016, claimed that he was disabled as a result of his ulcerative colitis, asthma, back and spinal injuries,

4

glaucoma, and left eye problems, with an alleged onset date of December 12, 2015. (Stip. at 1; Tr. at 55.) The Commissioner denied plaintiff's application, and on November 11, 2016, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*See* Tr. at 12.)

On September 5, 2018, ALJ Joani Sedaca presided over plaintiff's hearing. (*See id.* at 21.) Plaintiff appeared in person, and was represented by William Aronin, Esq. (*Id.* at 23.) Melissa Fass Karlin, a vocational expert, provided testimony during the hearing. (*Id.* at 46.) In a decision dated November 1, 2018, ALJ Sedaca concluded that plaintiff was not disabled. (*Id.* at 12-17.)

Plaintiff appealed the ALJ's decision to the Appeals Council, and on November 5, 2019, the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), rendering the ALJ's decision the final decision of the Commissioner. On January 7, 2020, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint.)

## Legal Standard

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of

5

Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied, and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence, or if the decision was based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a "'reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether the plaintiff has "had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990) (second alteration in original)). The reviewing court does not have the authority to conduct a *de novo* review, and may not

6

substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used

to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotation and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual

8

functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, a court reviewing final decisions of the Commissioner is explicitly authorized to order further administrative proceedings when appropriate. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## Discussion

### I. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ in this matter determined at step one that plaintiff had not engaged in substantial gainful activity since his application date of August 23, 2016. (Tr. at 14.)

At step two, the ALJ determined that plaintiff suffered from the following severe impairments: left eye

9

blindness, lumbar degenerative disc disease, cervical degenerative disc disease, and obesity. (*Id.*) The ALJ noted that these impairments "significantly limit[ed] the ability [of plaintiff] to perform basic work functions as required by SSR 85-28." (*Id.*) In addition, the ALJ found that plaintiff's asthma was a non-severe impairment, reasoning that evidence of the impairment did not show that it caused "more than minimal functional limitations." (*Id.*)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that equaled the severity of listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (*Id.*)

At step four, the ALJ determined that plaintiff had the residual functional Capacity ("RFC") to perform "medium work"[1] as defined in 20 C.F.R. § 416.967, except for any work that required "fine visual acuity," a need for peripheral vision, and he could not be exposed to certain hazards during work, including unprotected heights, driving, or large moving machinery. (*Id.*) The ALJ found that although plaintiff's

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). "If someone can do medium work, . . . he or she can also do sedentary and light work," and light work "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b)-(c).

10

impairments could reasonably be expected to cause his alleged symptoms, plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the rest of the medical evidence and other evidence in the record. (*Id.* at 15.)

In addition, the ALJ opined that "[t]he record contain[ed] very sparse medical evidence, with no record of treatment since [plaintiff] received physical therapy in 2016." (*Id.* at 16.) The ALJ noted that there were "no medical opinions from treating sources" in the record. (*Id.*) The ALJ accorded the opinion of Dr. Fkiaras, the consultative internal medicine examiner, "little weight," reasoning that there was not "adequate support in the [record] for the extent of the restrictions th[e] one-time examiner g[ave], including [regarding plaintiff's purported] respiratory limitations." (*Id.*) The ALJ also discounted Dr. Fkiaras's opinion that plaintiff would have "moderate-to-severe schedule disruptions," because Dr. Fkiaras "did not explain what would cause these disruptions." (*Id.*)

The ALJ accorded "great weight," on the other hand, to a consultative ophthalmological evaluation performed by Dr. Joseph Sturm. (*Id.*) Dr. Sturm diagnosed plaintiff with total permanent blindness in the left eye. (*Id.*)

11

Lastly, at step five, the ALJ determined that plaintiff was capable of performing his past relevant work as a cleaner. (*Id.* at 17.) The ALJ reasoned that the work-related activities required of a cleaner were not precluded by plaintiff's RFC. (*Id.*)

Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Act since August 23, 2016. (*Id.*)

## II. The ALJ's RFC Determination Was Not Supported by Substantial Evidence

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence, because the ALJ incorrectly rejected Dr. Fkiaras's opinion, the only opinion in the record that provided for a functional assessment of plaintiff's bodily impairments. (*See* ECF No. 17, Plaintiff's Memorandum of Law, at 2-6.) Plaintiff avers that the ALJ failed to explain why past evidence of plaintiff's bouts of ulcerative colitis were insufficient to support Dr. Fkiaras's opinion that plaintiff would have "moderate-to-severe schedule disruptions." (*Id.* at 4-5.) With respect to Dr. Fkiaras's opinion that plaintiff would have moderate limitations in standing for extended periods of time and in repetitive heavy lifting, plaintiff agues that the ALJ "did not discuss which evidence formed [the ALJ's] determination to reject this portion of the

opinion such that the court might be informed of the basis for his rejections of these limitations." (*Id.* at 6.) Regarding the ALJ's observation that the "record contains very sparse medical evidence," plaintiff suggests that the ALJ equated an "absence of records or the absence of a treating source opinion . . . to an absence of disability." (*Id.*)

      A. <u>Bodily Limitations</u>

Based on the consultative exam of plaintiff, Dr. Fkiaras opined, *inter alia*, that plaintiff "ha[d] a moderate limitation for standing for extended periods and for repetitive heavy lifting carrying, pushing, pulling, squatting, kneeling, and crouching, and added that [plaintiff] should avoid smoke, dust, and known respiratory irritants." (Tr. at 16.) These purported limitations identified by Dr. Fkiaras are potentially at odds with the ALJ's conclusion that plaintiff could perform "medium work," which requires "frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). The ALJ accorded "little weight" to Dr. Fkiaras's opinion, finding that there was "not adequate support in the [record] for the extent of the restrictions this one-time examiner" identified. (Tr. at 16.) Further, the ALJ noted that Dr. Fkiaras's opinion was "not supported by treatment records or a supportive statement from a treating doctor." (*Id.*)

13

Dr. Fkiaras's opinion was based on a one-time consultative exam, and the ALJ was within her discretion to accord it little weight if it was unsupported. However, Dr. Fkiaras's opinion was the *only* opinion in the record regarding plaintiff's physical limitations. As the ALJ acknowledged, the record contained "very sparse medical evidence." (*Id.*) The questions, then, are (1) how, without relying on any medical opinion evidence, the ALJ came to the conclusion that plaintiff could perform "medium work," and (2) whether that conclusion was supported by substantial evidence.

"The ALJ must build an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review." *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quotation omitted). Here, it is not clear how the ALJ reached the conclusion that plaintiff could perform "medium work." Though this court takes no position as to whether plaintiff could or could not perform "medium work," there is evidence in the record that appears consistent with the limitations identified by Dr. Fkiaras, and that evidence was not dealt with in the ALJ's decision. An MRI of plaintiff's spine in July 2016 revealed various bulging discs in plaintiff's spine. (Tr. at 291.) An x-ray in 2016 revealed "moderate degenerative spondylosis (disc space narrowing and osteophyte formation)" in plaintiff's spine. (*Id.* at 281.) The ALJ

14

mentioned this objective evidence, but at no point in the decision did the ALJ grapple with it or explain why plaintiff could perform "medium work," which requires frequent lifting, despite these apparent spinal issues. Though the burden was on plaintiff to demonstrate that he was not capable of working, "it is incumbent upon the ALJ to provide a detailed rationale for either rejecting the [plaintiff's] limitations or deeming them accommodated by the limitations stated as part of the RFC assessment[.]" *Long v. Berryhill*, No. 18-cv-1146, 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019).

The Commissioner offers several arguments for why the ALJ properly found that plaintiff was not disabled, including that plaintiff's course of treatment for his spine was conservative. (*See* ECF No. 19, Defendant's Memorandum of Law ("Def. Mem."), at 7.) But it is well-established that it is improper to find that a claimant is "not physically disabled" merely because a doctor "recommended only conservative physical therapy[.]" *Shaw*, 221 F.3d at 134. The Commissioner also points out that plaintiff told the ALJ that he could comfortably lift 35 to 40 pounds, which is consistent with the requirements of "medium work." (Def. Mem. at 8.) The Commissioner is correct that plaintiff's own testimony can be persuasive evidence that he is not disabled, but the ALJ's decision did not actually rely on that testimony, and so the "Commissioner's

15

attempt to rely on [it] in support of its argument . . . constitutes a post-hoc rationalization for the ALJ's ultimate conclusion." *Martinbeault v. Astrue*, No. 07-cv-1297, 2009 WL 5030789, at *5 (N.D.N.Y. Dec. 14, 2009).

To be clear, the court is not convinced that the ALJ's ultimate RFC conclusion, that plaintiff could perform "medium work," was incorrect. The court, however, must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence. Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *See Pratts*, 94 F.3d at 39. The court finds that in this case, requiring further clarification and reasoning from the ALJ is appropriate.

### B. Schedule Disruptions

The ALJ also found that Dr. Fkiaras provided no explanation for his opinion that plaintiff would have "moderate-to-severe schedule disruptions." (Tr. at 16.) The ALJ was correct that there was no explanation of Dr. Fkiaras's opinion regarding disruptions on the last page of his examination report. (*Id.* at 280.) However, Dr. Fkiaras's full report provided a clear basis for the conclusion that plaintiff would suffer from moderate or severe schedule disruptions. Dr. Fkiaras noted that plaintiff suffered daily abdominal pain as a

16

result of being stabbed in the 1990s, and that plaintiff reported a "history of ulcerative colitis since 2005." (*Id.* at 277.) In addition. Dr. Fkiaras noted that plaintiff reported suffering from diarrhea four to five times per day, and occasionally up to ten times per day. (*Id.*) The court, therefore, agrees with plaintiff that the ALJ should not have discounted Dr. Fkiaras's opinion regarding schedule disruptions, without providing more explanation or citing specific evidence in the record that contradicted Dr. Fkiaras's opinion.

The Commissioner contends that plaintiff reportedly suffered from ulcerative colitis since 2005, but that he was able to work, in spite of that condition, until 2015. (*See* Def. Mem. at 10.) Again, that fact may ultimately be relevant to whether plaintiff was disabled. However, the ALJ's purported reasons for discounting Dr. Fkiaras's opinion were inadequate, and so remand is appropriate. If plaintiff were indeed to suffer from moderate-to-severe schedule disruptions, that may alter the RFC analysis. On remand, if the ALJ again disagrees with Dr. Fkiaras's opinion regarding schedule disruptions, the ALJ should more fully address the medical evidence and the portions of Dr. Fkiaras's opinion described above.

## Conclusion

Because the court finds that the ALJ failed to adequately build a roadmap for the RFC determination, remand for

17

further proceedings is proper here.  Accordingly, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          November 4, 2020

                                            /s/
                                     Hon. Kiyo A. Matsumoto
                                     United States District Judge